# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MACFARLANES, LLP,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:13-cv-01519-MHH** |
| | } | |
| **CHARLES LANGE CLARK,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Thus far, the death of Kathryn Marie Lange, a native of Alabama and long-time resident of London, has generated two probate actions, one in Alabama and one in England. A will contest begun and then abandoned in the probate action in England generated a fee collection proceeding before the High Court of Justice in England, which in turn generated the instant action to enforce in Alabama the judgment of the High Court of England, which in turn generated a petition for a writ of mandamus that effectively asks the Alabama Supreme Court to decide who ultimately will be responsible for paying the High Court judgment if the judgement can be enforced in Alabama.[1]

The probate action in Alabama remains open. Charles Lange Clark, Ms. Lange's nephew, is the administrator of Ms. Lange's Alabama estate. Mr. Clark

---

[1] Technically, the petition for writ of mandamus concerns the Probate Court of Jefferson County's order of escrow. (*See* Doc. 51-1).

launched the will contest in the English probate court action with the assistance of Macfarlanes, LLP.  The English probate proceeding settled at mediation.  (Doc. 12-1, pp. 38–45).  When Mr. Clark refused to pay Macfarlanes in full for its efforts in the English probate court proceeding, Macfarlanes brought a breach of contract action in the High Court of England to collect outstanding fees.[2]  Armed with a favorable judgment, Macfarlanes has crossed the pond to seek satisfaction of that judgment in this Court pursuant to Alabama's Uniform Foreign-Country Money Judgments Recognition Act.  Mr. Clark offers a host of statutory defenses to Macfarlanes's attempt to enforce its judgment.  Macfarlanes has filed a motion for summary judgment, as has Mr. Clark.   This opinion examines the parties' arguments and resolves the case as a matter of law.

### Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate that there is a genuine

---

[2] The High Court of Justice is divided into the Queen's Bench, Chancery, and Family Divisions. Courts and Tribunals Judiciary, *High Court*, https://www.judiciary.gov.uk/you-and-the-judiciary/going-to-court/high-court/.  The Queen's Bench Division possesses both civil and criminal jurisdiction and typically hears contract and tort actions.  Courts and Tribunals Judiciary, *Queen's Bench Division: Work*, https://www.judiciary.gov.uk/you-and-the-judiciary/going-to-court/high-court/queens-bench-division/work/.  The Chancery Division hears civil cases, "including specialist work such as companies, patents and contentious probate." Courts and Tribunals Judiciary, *The Chancery Division: Work*, https://www.judiciary.gov.uk/you-and-the-judiciary/going-to-court/high-court/the-chancery-division/work/.

dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When considering a summary judgment motion, a court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Georgia State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) (internal quotation marks and brackets omitted) (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)). "If both parties proceed on the same legal theory and rely on the same material facts . . . the case is ripe for summary judgment." *Id.* (internal quotation marks omitted) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)).

3

**Factual Background**

On February 5, 1930, Kathryn Marie Lange was born in Birmingham, Alabama.  (Doc. 73-1, p. 5).  On January 4, 2010, Ms. Lange died in London, England after residing in London for over forty years.  (Doc. 19-1, ¶ 9; Doc. 73-1, p. 6).  Soon thereafter, Ms. Lange's nephew, Mr. Clark, filed a petition for letters of administration in the Probate Court of Jefferson County, Alabama, and the Probate Court appointed Mr. Clark administrator of Ms. Lange's estate.  (Doc. 73-1, p. 2; Doc. 69-2, ¶ 2).

While the probate action was proceeding in Jefferson County, Ms. Lange's former attorney lodged Ms. Lange's purported will with the English courts.  (Doc. 19-1, p. 8).  The Probate Court of Jefferson County advised Mr. Clark "to get legal counsel in England to question the [validity]" of the will and other legal documents produced in the English probate action and authorized Mr. Clark, "within reason, to pay . . . legal fees for the estate in both Birmingham and England . . . ."  (Doc. 18-2, pp. 2–3).

Mr. Clark retained Macfarlanes in connection with the English probate proceeding.  (Doc. 69-2, pp. 17–19; Doc. 34, ¶ 1).  The parties dispute whether the agreement between Mr. Clark and Macfarlanes obligated Mr. Clark to pay Macfarlanes's fees in his individual capacity or solely in his capacity as the administrator of Ms. Lange's estate.  (*Cf.* Doc. 9, pp. 19–21, *with* Doc. 69-1, p. 4).

Macfarlanes provided Mr. Clark with legal services for several months, during which time Macfarlanes submitted bills for substantial fees for those services, fees that largely went unpaid.  (Doc. 10-3, pp. 44–48).  When Macfarlanes and Mr. Clark failed to reach an agreement regarding payment of the outstanding fees, Macfarlanes withdrew as Mr. Clark's counsel of record in the English probate proceeding.  (Doc. 10-3, pp. 37–41).

Macfarlanes made informal attempts to collect the unpaid fees.  When those efforts proved unsuccessful, Macfarlanes initiated a debt collection proceeding against Mr. Clark in England in the Queen's Bench Division of the High Court of Justice.  (Doc. 10-3, pp. 49–50; Doc. 10-2).  Macfarlanes served its claim on Mr. Clark in Alabama pursuant to an order of the High Court of Justice.  (Docs. 10-5, 10-6, 10-7, 10-8).  Mr. Clark retained K.A. Arnold & Co. to present his defence to Macfarlanes's claim.  (Doc. 10-9; Doc. 10-12).  *See* Civil Procedure Rule 15.2 ("A defendant who wishes to defend all or part of a claim must file a defence.").[3]  K.A. Arnold served Mr. Clark's defence on Macfarlanes and waived any defects in Macfarlanes's service on Mr. Clark.  (Doc. 10-11).

At some point after filing Mr. Clark's defence, K.A. Arnold ceased receiving instructions from Mr. Clark, and the High Court allowed K.A. Arnold to withdraw its representation.  (Docs. 10-13, 10-14).  Because Mr. Clark did not secure other

---

[3] Available at https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part15.

counsel or participate personally in the debt collection proceeding after the departure of K.A. Arnold, the High Court of Justice issued an order informing Mr. Clark that his defence would be struck unless he complied with the High Court's scheduling order and responded to Macfarlanes's requests for information.  (Doc. 10-19).  *See* Civil Procedure Rule 3.4(2) ("The court may strike out a statement of case if it appears to the court . . . that there has been a failure to comply with a rule, practice direction or court order.").[4]  Mr. Clark failed to respond, and Macfarlanes applied for an order striking Mr. Clark's defence and entering judgement for Macfarlanes.  (Doc. 10-21).  The High Court of Justice entered judgment against Mr. Clark for £126,611.21 with interest to "accrue at the rate of 8% from the date of [the] Order until the date on which the Judgment Debt is satisfied."  (Doc. 10-22, p. 2).

Macfarlanes then filed a complaint in this Court seeking recognition of the High Court judgment against Mr. Clark under the Alabama Uniform Foreign-Country Money Judgments Recognition Act, Ala. Code §§ 6-9-250–61, or "pursuant to traditional principles of international comity."  (Doc. 33, p. 1). Macfarlanes also seeks an award of its attorneys' fees, expenses, and costs.  (Doc. 33, pp. 13, 15).

---

[4] Available at https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part03#3.4.  Although Macfarlanes filed its claim against Mr. Clark in the Queen's Bench Division of the High Court of Justice, the case later was transferred to the Chancery Division.  (Doc. 34-1, ¶ 3).  The Chancery Division issued the order informing Mr. Clark that his defence would be struck if he did not comply with the scheduling order.

**Discussion**

Macfarlanes, as the "party seeking recognition of a foreign-country judgment," bears "the burden of establishing that [the Act] applies to the foreign-country judgment." Ala. Code § 6-9-252(c). To meet this burden, Macfarlanes must show that the foreign-country judgment for which it seeks recognition "grants or denies recovery of a sum of money" and, "under the law of the foreign country where rendered, is final, conclusive, and enforceable." Ala. Code § 6-9-252(a).

The parties do not dispute that Macfarlanes has satisfied the basic requirements for recognition of a foreign-country judgment under Alabama law. England is a foreign country, and the High Court judgment is a foreign-country judgment as defined in § 6-9-251. The High Court judgment grants a sum of money to Macfarlanes. (Doc. 10-22). And that judgment in favor of Macfarlanes is "final, conclusive, and enforceable" because it is "not subject to additional proceedings in the rendering court," it determined the "legal rights and obligations" of Macfarlanes and Mr. Clark, and it could be enforced through "the legal procedures of the state" if Mr. Clark had assets subject to the High Court's jurisdiction. Ala. Code § 6-9-252 uniform comment 3; *see also Eurodis Electron PLC v. Unicomp, Inc.*, No. CIVA1:04CV2669-JEC, 2006 WL 1209922, at *3–5 (N.D. Ga. Apr. 28, 2006) (relying on the unrebutted affidavit of an English solicitor for an explication of English law in connection with Georgia's Uniform

7

Foreign-Country Money Judgments Recognition Act); (Doc. 10-1, ¶¶ 4–6; Doc. 34-1, ¶ 5; Doc. 65-1, ¶ 9). Therefore, the Court finds that Macfarlanes has satisfied the basic requirements for recognition of a foreign-country judgment under Alabama law. As a result, the Court must recognize the High Court judgment unless the judgment falls within one of a limited number of exceptions. Ala. Code § 6-9-253(a) ("Except as otherwise provided in subsections (b) and (c), a court of this state shall recognize a foreign-country judgment to which this article applies.").

Relying on the statutory exceptions to mandatory recognition, Mr. Clark contends that the Court cannot recognize the High Court judgment because the High Court did not have personal jurisdiction over him. (Doc. 69-1, p. 26); Ala. Code §§ 6-9-253(b)(2), 254. Mr. Clark also argues that the Court should not recognize the High Court judgment because the judgment "is repugnant to the public policy" of Alabama, "conflicts with another final and conclusive judgment," is based on a proceeding that was "contrary to an agreement between the parties," and was rendered in a "seriously inconvenient forum." (Doc. 69-1, p. 26); Ala. Code §§ 6-9-253(c)(3)–(6). The Court examines each of Mr. Clark's contentions in turn, keeping in mind that Mr. Clark bears the burden of establishing that recognition should not occur. Ala. Code § 6-9-253(d) ("A party resisting

recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition . . . exists.").

## A. Personal Jurisdiction

The Act provides that a court "shall not recognize a foreign-country judgment if . . . the foreign court did not have personal jurisdiction over the defendant . . . ." Ala. Code § 6-9-253(b). The Act lists six potential bases for personal jurisdiction over a defendant that are sufficient to support a foreign-country judgment, but "[t]he list of bases for personal jurisdiction . . . is not exclusive." Ala. Code § 6-9-254(b). Macfarlanes asserts that the High Court had jurisdiction over Mr. Clark because Mr. Clark, "before the commencement of the proceeding, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved . . . ." Ala. Code § 6-9-254(a)(3); (Doc. 9, p. 18). As an additional basis for the High Court's jurisdiction, Macfarlanes argues that Mr. Clark "voluntarily appeared in the proceeding, other than for the purpose of . . . contesting the jurisdiction of the court . . . ." Ala. Code § 6-9-254(a)(2); (Doc. 9, p. 18).

Macfarlanes's argument that Mr. Clark agreed to submit to the jurisdiction of the High Court is based on the engagement letter and terms of business provided to Mr. Clark by Macfarlanes. (Doc. 9, p. 18). The engagement letter, a copy of which Mr. Clark signed and returned to Macfarlanes, provides that the terms of

business "will apply both to this matter and any further matters on which we act for you."  (Doc. 10-3, p. 13; Doc. 21-1, p. 29).  Term of business 14.8 states, "[o]ur relationship will be governed by the laws of England and will be subject to the exclusive jurisdiction of the English courts."  (Doc. 10-3, p. 22).

Mr. Clark responds that he is not personally bound by the forum selection clause of the terms of business or required to submit to the jurisdiction of the English courts because he signed the engagement letter in his capacity as administrator of Ms. Lange's estate.  (Doc. 69-1, p. 27).  In support of this contention, Mr. Clark points to the signature page of the engagement letter, which under "Name:" reads, "Lange Clark, Administrator of the Estate of Kathryn M. Lange." (Doc. 21-1, p. 29).

Had Mr. Clark remained an active participant in the fee proceeding, the High Court surely would have had to grapple with whether Mr. Clark retained Macfarlanes in his personal capacity, in his capacity as administrator, or both.  The lack of any reference in the detailed engagement letter to Mr. Clark in his role as administrator might argue in favor of a finding that Mr. Clark retained Macfarlanes in his individual capacity.  (*See* Doc. 10-3, pp. 14–18).  Particular provisions of the engagement letter relating to payment also might lend credence to the idea that the engagement letter obligated Mr. Clark personally.  (*See, e.g.*, Doc. 10-3, p. 14

("We have identified you as our client for professional purposes and we will only address our bills to you.")).

On the other hand, the signature page of the engagement letter constitutes evidence that Mr. Clark retained Macfarlanes in his capacity as administrator of Ms. Lange's estate.  (Doc. 21-1, p. 29).  Had the High Court had the opportunity to evaluate the evidentiary weight to be given to the signature page, the High Court might have considered whether the signature page was provided to Macfarlanes on August 11, 2010 when Mr. Clark sent by email the other documentation Macfarlanes had requested from Mr. Clark.[5]  (Doc. 10-3, pp. 24–28).  Based on the record before this Court, Mr. Clark appears to have provided the signature page to Macfarlanes for the first time on December 2, 2010—the day after Macfarlanes terminated its client relationship with Mr. Clark.  (Doc. 10-3, pp. 37–38, 41–43; *see also* Doc. 10-2, p. 3; Doc. 5-1, p. 50 ("The Claimant has been unable to locate the signature page attached to the email.  However, the Defendant did subsequently provide a signed signature page on 2 December 2010."); Doc. 10-12, ¶ 5 ("It is averred that the said the copy of the Engagement Letter which accompanied the same was not then returned to [Macfarlanes] . . . .")).

---

[5] Mr. Clark's August 11, 2010 email was addressed to Lucy Hawks, a senior solicitor at Macfarlanes, and included as attachments a copy of Mr. Clark's passport, a copy of Mr. Clark's water bill, and a copy of the letter Mr. Clark sent to Charles Russell LLP to inform that firm he had retained other counsel.  (Doc. 10-3, pp. 24–28).  No other attached files are listed on Mr. Clark's email to Ms. Hawks.  (Doc. 10-3, p. 24).

But this Court is not the High Court, and this Court does not have to address the many questions that Mr. Clark left unanswered when he abandoned the High Court fee proceeding because there is an alternative basis for personal jurisdiction.[6] The second basis offered by Macfarlanes for the High Court's jurisdiction over Mr. Clark concerns Mr. Clark's voluntary participation in the debt collection proceeding.  (Doc. 9, pp. 18–19).  Mr. Clark responds that the defence he offered in the debt collection proceeding challenged the High Court's jurisdiction and thus meets the limitation contained in § 6-9-254(a)(2).  Ala. Code § 6-9-254(a) (court cannot refuse recognition of a foreign-country judgment "for lack of personal jurisdiction if . . . the defendant voluntarily appeared in the proceeding, other than for the purpose of protecting property seized or threatened with seizure in the proceeding or of contesting the jurisdiction of the court over the defendant . . . .").  The record does not bear out Mr. Clark's contention.

Mr. Clark did not limit his defence in the High Court to a challenge to that court's jurisdiction over him.  In fact, Mr. Clark never mentioned the jurisdiction of the High Court.  Instead, Mr. Clark, through his attorneys, denied that he was indebted to Macfarlanes.  (Doc. 10-12, ¶ 2.1).  Mr. Clark repeatedly argued that he

---

[6] Mr. Clark makes two additional arguments: one concerning whether the engagement letter was addressed—or only sent—to him personally and one concerning the meaning of the word "our" in the terms of business.  (Doc. 69-1, pp. 27–29, 31–33).  Because the Court finds a genuine dispute exists that precludes summary judgment on the issue of the High Court's jurisdiction over Mr. Clark under § 6-9-254(a)(3), the Court need not reach Mr. Clark's additional arguments.

retained Macfarlanes solely in his capacity as the administrator of Ms. Lange's estate. (Doc. 10-12, ¶¶ 2.2–2.4, 2.6, 5–10). He added that the fees that Macfarlanes charged were "grossly excessive for the work done by the Claimant." (Doc. 10-12, ¶ 3.1). Mr. Clark questioned Macfarlanes's computation of the fees claimed. (Doc. 10-12, ¶ 3.2). Mr. Clark accused Macfarlanes of inflating the number of hours for which it charged, or alternatively, of spending an excessive number of hours on the English probate proceeding, "bearing in mind the nature of the work and the way in which it was carried out." (Doc. 10-12, ¶¶ 3.5, 3.6). Mr. Clark set out his assessment of the specific shortcomings of the work that Macfarlanes performed in the English probate proceeding. (Doc. 10-12, ¶¶ 3.6.1–3.6.8). Thus, Mr. Clark voluntarily appeared and participated in the High Court proceeding that Macfarlanes brought against him.

Mr. Clark asks this Court to construe his argument regarding the capacity in which he retained Macfarlanes as a challenge to the jurisdiction of the English courts. (Doc. 69-1, pp. 33–34). But doing so would reinvent the argument that Mr. Clark made to the High Court. Mr. Clark's defence raised the capacity argument in relation to his potential liability to Macfarlanes, not in relation to the High Court's power to adjudicate the dispute between the parties. (*See, e.g.*, Doc. 10-12, ¶ 2.3). Expecting the High Court—or this Court—to discern an argument about jurisdiction within statements about capacity shifts the burden off the litigant

to present his own case and demands clairvoyance from the High Court.  *See T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1291 (11th Cir. 2015) ("[D]istrict courts should not 'be expected to construct full blown claims from sentence fragments . . . .'").

Moreover, even if the Court were to give Mr. Clark the benefit of his current characterization of his High Court argument regarding capacity, the Court already has illustrated that Mr. Clark's arguments to the High Court ventured well beyond capacity issues.  Mr. Clark expressed his intent, if found personally liable, to contest the amount of the recovery sought by Macfarlanes.  (Doc. 10-12, ¶ 3).  Mr. Clark reserved the right to dispute the interpretation given to the engagement letter and terms of business if those documents were found to apply to Mr. Clark personally.  (Doc. 10-12, ¶ 5).  Mr. Clark reserved the right to have Macfarlanes's fees audited if Mr. Clark was found personally liable.  (Doc. 10-12, ¶ 16).  In each instance, Mr. Clark's defence, while denying that a judgment against him personally would be proper, addressed the merits of Macfarlanes's claim.  (*See also* Doc. 10-12, ¶¶ 2.2–2.4, 2.6, 3.1, 3.2, 3.5, 3.6, 3.6.1–3.6.8, 5–10).

Therefore, Mr. Clark voluntarily appeared in the debt collection proceeding for a purpose other than contesting the jurisdiction of the High Court, and the judgment that the High Court rendered may not be refused recognition for lack of personal jurisdiction under § 6-9-254.  *See Genujo Lok Beteiligungs GmbH v.*

*Zorn*, 943 A.2d 573, 580 (2008) (finding under Maine's Uniform Foreign Money-judgments Recognition Act that raising jurisdictional and substantive arguments constituted appearing "other than for the purpose of . . . contesting the jurisdiction of the court over the defendant"); *CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 792 N.E.2d 155, 161–62 (2003) (finding same under New York's Uniform Foreign Country Money-Judgments Recognition Act).

## B. Public Policy

Unlike the absence of personal jurisdiction over the defendant, which precludes recognition of a foreign-country judgment, the remaining grounds for nonrecognition that Mr. Clark offers are discretionary. *See* Ala. Code § 6-9-253(c) (describing circumstances in which "[a] court of this state need not recognize a foreign-country judgment"). In Mr. Clark's first discretionary argument, he contends that the "judgment is repugnant to the public policy of Alabama because it violates Alabama's doctrines of judicial estoppel, equitable estoppel, and Alabama's statutory scheme for the protection of Administrators in probate cases." (Doc. 69-1, p. 36); *see also* Ala. Code § 6-9-253(c)(3) (A foreign-country judgment need not be recognized if "the judgment or the claim for relief on which the judgment is based is repugnant to the public policy of this state or of the United States . . . .").

As an initial matter, it seems a stretch to characterize the well-settled common law principles of judicial and equitable estoppel as statements of the public policy of the State of Alabama. "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion . . . ." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks and citation omitted). Likewise, equitable estoppel—by its very name—relies upon the equitable powers of a court. Both doctrines rely on common law principles older than the state of Alabama. *See, e.g.*, *Hamilton v. Zimmerman*, 37 Tenn. 39, 48–49 (1857) (applying judicial estoppel on the basis of preexisting doctrines of estoppel); *Langston v. McKinnie*, 6 N.C. 67, 68 (1811) (applying equitable estoppel); Alabama Department of Archives and History, *Alabama History Timeline*, http://www.archives.alabama.gov/timeline/al1801.html (Alabama entered the Union as the 22nd state on December 14, 1819.). Neither form of estoppel is grounded in a state statute or another local legislative enactment, and "[i]t is well established that the Legislature is endowed with the exclusive domain to formulate public policy in Alabama." *Leonard v. Terminix Int'l Co., L.P.*, 854 So. 2d 529, 534 (Ala. 2002) (internal quotation marks and alterations omitted).

Assuming though, for argument's sake, that judicial and equitable estoppel represent the public policy of Alabama, Mr. Clark fails in his attempt to show that

the doctrines should apply in this case.  A party that invokes judicial estoppel must

demonstrate that:

> (1) [another] party's later position [is] clearly inconsistent with its
> earlier position; (2) the party [was] successful in the prior proceeding
> so that judicial acceptance of an inconsistent position in a later
> proceeding would create the perception that either the first or second
> court was misled; and (3) the party seeking to assert an inconsistent
> position [will] derive an unfair advantage or impose an unfair
> detriment on the opposing party if not estopped.

*Ex parte First Alabama Bank*, 883 So. 2d 1236, 1244–45 (Ala. 2003), *as modified

on denial of reh'g* (Nov. 21, 2003) (internal citations and quotation marks omitted).

According to Mr. Clark, Macfarlanes's actions before the Probate Court of

Jefferson County provide a basis for applying judicial estoppel to Macfarlanes's

efforts to have this Court recognize the High Court judgment.  (Doc. 69-1, pp. 36–

41).  The Court disagrees.

Macfarlanes's participation in the Alabama probate proceeding was

extremely limited.  After Macfarlanes filed this action, Mr. Clark filed a motion for

declaratory relief before the Probate Court.  (Doc. 5-1).  Among other things, Mr.

Clark asked the Probate Court to declare that the High Court judgment obtained by

Macfarlanes "against the Administrator in his personal capacity is unenforceable."

(Doc. 5-1, p. 2).  Macfarlanes opposed Mr. Clark's motion, arguing that the

Probate Court did "not have personal or subject matter jurisdiction over

Macfarlanes and the issue of enforcement of its judgment against Clark."  (Doc.

17

17-2, p. 2).  While the motion for declaratory relief was pending, Mr. Clark filed a motion for an order of indemnification in which he sought to have Ms. Lange's estate indemnify "him individually for the cost of defending any and all actions against him individually as well as any potential judgment against him." (Doc. 21-1, p. 55).  Later, Mr. Clark filed additional support for his motion for indemnification, asking the Probate Court, "pursuant to *Code of Alabama* Section 43-2-544(21), for exoneration from personal liability of Lange Clark, individually, from any claim, action, or judgment by Macfarlanes, LLP." (Doc. 21-2, p. 90).

The Probate Court granted Mr. Clark's motions.  (Doc. 21-1, pp. 93–95, 97–99).  In granting the motion for declaratory relief, the Probate Court qualified its order by observing that Macfarlanes had not been served in the Alabama probate proceeding and that "the court makes no attempt to issue a judgment against Macfarlane[s] LLP." (Doc. 21-2, p. 93).  In the order on indemnification and exoneration, the Probate Court noted:

> The Court is informed there is no objection to the motion, including none by Macfarlanes, LLP who previously made a limited appearance opposing a Motion for Declaratory Judgment filed by Mr. Clark, was informed of the pendency of the Motion for Indemnification, and was granted a continuance to consider its position on the Motion for Indemnification.

(Doc. 21-2, p. 97).

In Mr. Clark's version of events, "Macfarlanes consented to the exoneration . . . ." (Doc. 69-1, p. 39).  Proceeding from that premise, Mr. Clark concludes

18

"Macfarlanes' position in this case is remarkably inconsistent with its position taken in the Probate Court.  Therefore, the first element of judicial estoppel has been satisfied."  (Doc. 69-1, p. 39).  The record belies Mr. Clark's characterization of Macfarlanes's actions.

Macfarlanes was not a party to the Probate Court action; Macfarlanes made a limited appearance to contest the Probate Court's jurisdiction over the law firm and the firm's claim for fees against Mr. Clark.  The Probate Court agreed, when issuing the order on declaratory relief, that the order did not bind Macfarlanes.  Under those circumstances, the absence of an objection from Macfarlanes to Mr. Clark's motion for indemnification and exoneration is entirely consistent with Macfarlanes's position that the Probate Court could not exercise jurisdiction over the firm; had MacFarlanes objected, the firm may well have voluntarily subjected itself to the jurisdiction of the Alabama probate court (much like Mr. Clark voluntarily participated in the High Court proceeding and, consequently, became subject to that court's jurisdiction).  Macfarlanes took no position on Mr. Clark's motions for indemnification and exoneration, and as a result, Macfarlanes's position on the issue of indemnification and exoneration in this action is not clearly

inconsistent with a previous position.  Mr. Clark's judicial estoppel argument fails at the first step.[7]

Mr. Clark's equitable estoppel argument fares no better.

> [F]or the doctrine of equitable estoppel to apply, a party must demonstrate: (1) That the person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on; (2) That the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon the communication; and (3) That the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.

*Wehle v. Bradley*, No. 1101290, 2015 WL 6618633, at *8 (Ala. Oct. 30, 2015) (internal citations, quotation marks, and alterations omitted).

Mr. Clark bases his equitable estoppel claim on Macfarlanes's knowledge that "Mr. Clark was acting solely in his capacity as Administrator" coupled with Macfarlanes's failure to "honor its agreement and public acknowledgments that Mr. Clark was acting as Administrator."  (Doc. 69-1, pp. 42, 43).  In terms of reliance, Mr. Clark states he "relied on the fact that he signed the 'Engagement Letter' 'Lange Clark, Administrator of the Estate of Kathryn M. Lange'" and

---

[7] Mr. Clark's judicial estoppel argument also fails at the second and third steps.  Characterizing Macfarlanes's inaction in a case to which it was not a party as "consenting to the exoneration" turns the concept of personal jurisdiction on its head.  (Doc. 69-1, p. 40).  Macfarlanes fairly and properly refrained from addressing the merits of the Probate Court proceeding because the firm was not subject to the Probate Court's jurisdiction.  Macfarlanes did not gain an unfair advantage or impose an unfair detriment on Mr. Clark by following settled jurisdictional principles.

"upon the fact that Macfarlanes accepted he was only acting as Administrator." (Doc. 69-1, p. 43).

Mr. Clark offers evidence that Macfarlanes was aware of his role as administrator of Ms. Lange's estate in Alabama, but no evidence that Macfarlanes knew or believed that Mr. Clark was acting solely in his capacity as administrator when he retained Macfarlanes. The engagement letter is silent on that point except for the signature page, which the record suggests Macfarlanes received after the firm terminated its relationship with Mr. Clark. (Doc. 10-3, pp. 10–18, 37–38, 41–43). Mr. Clark's inability to produce evidence of a representation by Macfarlanes on which he relied is fatal to his equitable estoppel argument. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

As an alternative to his estoppel theories, Mr. Clark offers public policy arguments based on Alabama's statutes regulating the conduct and liability of administrators. Mr. Clark is on firmer footing with respect to the assertion that laws duly enacted by the Alabama Legislature represent the public policy of the

State, but he faces a "stringent test for finding a public policy violation . . . ."  Ala.

Code § 6-9-253 uniform comment 8.

> Public policy is violated only if recognition or enforcement of the foreign-country judgment would tend clearly to injure the public health, the public morals, or the public confidence in the administration of law, or would undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel.

*Id.* (internal quotation marks and citation omitted).  In examining the statutes cited

by Mr. Clark, the Court heeds the admonition that the "words used in a statute

must be given their natural, plain, ordinary, and commonly understood meaning,

and where plain language is used a court is bound to interpret that language to

mean exactly what it says."  *City of Orange Beach v. Benjamin*, 821 So. 2d 193,

196 (Ala. 2001) (internal quotation marks and alteration omitted).

Mr. Clark begins by quoting Ala. Code § 43-2-130: "Civil actions may be

brought against executors or administrators in their representative character, in all

cases, in the county in which letters were granted.  Service of process may be made

on them in any county in the state."  From this statutory text, Mr. Clark concludes

"venue of this action is only proper in the Probate Court."  (Doc. 69-1, p. 45).

Mr. Clark's argument suffers from at least two fundamental flaws.  First,

Macfarlanes brought suit against Mr. Clark in his individual capacity, not his

"representative character."  (Doc. 10-2, ¶ 2).  As a result, § 43-2-130 is irrelevant.

Second, Mr. Clark converts the plain, permissive word "may" in the statute into the

word "shall," a mandate.  Yet, the permissive nature of the venue statute is recognized by the cases Mr. Clark cites as support.  *See Tolbert v. Tolbert*, 903 So. 2d 103, 106 (Ala. 2004) (citing *Ex parte Wiginton*); *Ex parte Wiginton*, 743 So. 2d 1071, 1073 (Ala. 1999) (applying § 43-2-130 to an action against an executrix, but also finding that venue would be proper in another county under Alabama Rule of Civil Procedure 82(c)).

Next, Mr. Clark argues that under Ala. Code § 43-2-110,[8] he cannot be held liable for an amount "in excess of the assets which have come into his hands" as administrator.  (Doc. 69-1, p. 45).  Section 43-2-110 provides: "No executor or administrator is liable, except in the case provided by section 43-2-62, beyond the amount of assets which have come to his hands or which have been lost, destroyed, wasted, injured, depreciated or not collected by want of diligence on his part or an abuse of his trust."

What the case law makes clear—and Mr. Clark fails to mention—is that § 43-2-110 governs the liability of an executor or administrator *to the estate*.  *See McAleer v. Durry*, 593 So. 2d 1021, 1023 (Ala. 1992) (finding a special administrator liable to the estate "in the amount of the value of the assets that came into his hands and that were then lost because of his lack of diligence" and citing § 43-2-110); *Am. States Ins. Co. v. Copeland*, 534 So. 2d 275, 277 (Ala. 1988)

---

[8] Mr. Clark refers to "Code of Alabama section 43-2-100," but no such code section exists.  The text Mr. Clark quotes is drawn from Ala. Code § 43-2-110.

(citing § 43-2-110 and discussing the liability of an administrator to an estate); *Stone v. Curry*, 512 So. 2d 66, 68 (Ala. 1987) (same).  The Court finds no basis for applying § 43-2-110 to this case concerning Macfarlanes's efforts to collect unpaid legal fees.   Furthermore, the record indicates that the amount sought by Macfarlanes, $191,461.47 plus 8% interest from March 18, 2013, is less than the amount of the assets that came into Mr. Clark's hands as administrator of Ms. Lange's estate.   (Doc. 33, pp. 14–15; Doc. 73-1, p. 2 (estimating Ms. Lange's Alabama estate to be worth $350,000)).   As a result, if § 43-2-110 applied, the provision would not act to bar or reduce Macfarlanes's recovery.

Mr. Clark's final statutory argument rests on Ala. Code § 43-2-843.  (Doc. 69-1, pp. 45–47).  Under § 43-2-843, "a personal representative, acting prudently for the benefit of the interested persons, may properly . . . [p]rovide for exoneration of the personal representative from personal liability in any contract entered into on behalf of the estate."   Ala. Code §§ 43-2-843, 43-2-843(21).   Mr. Clark interprets this provision to mean that a personal representative may unilaterally and after the fact exonerate himself from personal liability under any contract that he has signed on behalf of the estate without respect to the terms of the contract.  (*See* Doc. 69-1, pp. 46–47).

Assuming for the sake of argument that Mr. Clark signed the engagement letter with Macfarlanes only on behalf of the estate and that § 43-2-843(21) is

potentially applicable, Mr. Clark's interpretation contradicts the plain meaning of the statute and basic principles of contract law. By its terms, § 43-2-843(21) permits a personal representative to provide for personal exoneration of the personal representative *in* any contract entered into on behalf of the estate. Mr. Clark did not provide for his exoneration in his contract with Macfarlanes and therefore has no recourse to § 43-2-843(21). In fact, the substance of the letter contains no information about the capacity in which Mr. Clark was acting or his potential liability. The after-the-fact signature page does not satisfy the requirement of § 43-2-843(21). (*See* Doc. 10-3, pp. 10–23).

An exoneration provision in a contract provides to the parties with whom a personal representative contracts on behalf of an estate notice that the personal representative is acting solely in a representative capacity, and the statute authorizes a personal representative to so limit his or her personal liability without violating his fiduciary duty to the estate. Failure to provide advance notice of the limited capacity in which the personal representative is acting leaves the estate open to litigation over capacity issues and the personal representative subject to personal liability.

Furthermore, "[o]ne party cannot unilaterally alter the terms of a contract after the contract has been made. Both parties must mutually assent to a modification." *Ex parte Amoco Fabrics & Fiber Co.*, 729 So. 2d 336, 340 (Ala.

1998) (internal citations omitted); *see also Smiths Water Auth. v. City of Phenix City*, 436 So. 2d 827, 831 (Ala. 1983) (noting that the mutual assent of the parties to a contract is necessary to modify the contract's terms).   Under Mr. Clark's interpretation of § 43-2-843(21), Mr. Clark would be free to declare himself exonerated at any time, in spite of a contract's silence or provisions to the contrary. Such unfettered discretion to alter the terms of an agreement would render Mr. Clark's promises illusory and cause any contracts he entered into on behalf of the estate to fail for lack of mutual obligation and lack of a meeting of the minds.  *See Ryan's Family Steakhouse, Inc. v. Kilpatric*, 966 So. 2d 273, 279–81 (Ala. Civ. App. 2006) (discussing the requirement of mutuality of obligation).

Because Mr. Clark's reading of § 43-2-843(21) would lead to absurd results, the Court will not adopt Mr. Clark's statutory interpretation.  *See City of Bessemer v. McClain*, 957 So. 2d 1061, 1076 (Ala. 2006) (applying absurd-results doctrine). "Unilateral grumbling cannot modify a bilateral contract," and neither can unilateral declarations of personal exoneration.  *Kinmon v. J. P. King Auction Co.*, 276 So. 2d 569, 570–71 (1973).  Personal representatives, like other parties, are bound by the contracts they make, and they are well advised to include in their contracts protections on which they hope to rely in the future.

Mr. Clark bases his last public policy argument on the prohibition against excessive fees found in the Alabama Rules of Professional Conduct.  (Doc. 69-1,

pp. 47–49).   While Mr. Clark details his disagreement with many aspects of the invoices he received from Macfarlanes, he does not explain how the Alabama Rules of Professional Conduct, which were created to help the legal profession in Alabama meet the obligations of self-regulation, represent the public policy of Alabama or the United States.   *See* Ala. R. Prof'l Conduct Preamble.   The Court will not endeavor to construct that argument on Mr. Clark's behalf.   *See T.P. ex rel. T.P.*, 792 F.3d at 1291.

In summary, Mr. Clark invokes doctrines and statutes of which Macfarlanes does not run afoul and objections that are not based on public policy.   None of Mr. Clark's arguments suggest that recognition of Macfarlanes's claim "would tend clearly to injure the public health, the public morals, or the public confidence in the administration of law, or would undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel."   Ala. Code § 6-9-253 uniform comment 8 (internal quotation marks and citation omitted).   Accordingly, the Court finds that the High Court judgment is not repugnant to the public policy of Alabama or the United States.

## C. Conflict with Another Final and Conclusive Judgment

A court may refuse recognition to a foreign-country judgment if "the judgment conflicts with another final and conclusive judgment . . . ."   Ala. Code § 6-9-253(c)(4).   Mr. Clark asserts that the High Court judgment conflicts with the

Probate Court's orders on declaratory relief and indemnification and exoneration. (Doc. 69-1, pp. 49–52).   Before examining whether the Probate Court's orders conflict with the High Court judgment, the Court must determine whether the Probate Court's orders constitute final and conclusive judgments.

"A final judgment is an order 'that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.'" *Lunceford v. Monumental Life Ins. Co.*, 641 So. 2d 244, 246 (Ala. 1994) (quoting *Bean v. Craig*, 557 So. 2d 1249, 1253 (Ala. 1990)).   Under the Alabama Rules of Civil Procedure, unless a court expressly enters judgment pursuant to Rule 54,

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Ala. R. Civ. P. 54.   A purported final judgment entered by a court may be deemed void "[w]hen a party is not served or joined in an action and the trial court thus acquires no jurisdiction over it . . . ."   *Campbell v. Taylor*, 159 So. 3d 4, 10–11 (Ala. 2014).

The order on declaratory relief entered by the Probate Court made no pretense of being a final judgment.   (*See* Doc. 12-1, p. 2).   The Probate Court did not certify the order as final under Rule 54, and the order did not conclusively determine the issues in the probate action or the rights of Mr. Clark and

Macfarlanes. On the contrary, the order "noted that Macfarlanes LLP was not served in this matter and contest[s] the jurisdiction of any judgment against [it] by this court." (Doc. 12-1, p. 2). Although Mr. Clark requested a declaration that the High Court judgment was unenforceable, the Probate Court granted Mr. Clark's motion only "as to the approval of the actions thus far by the Executor, Lange Clark . . . ." (Doc. 5-1, p. 20; Doc. 12-1, p. 2). The Probate Court made "no attempt to issue a judgment against Macfarlane[s] LLP." (Doc. 12-1, p. 2). Accordingly, the Probate Court's order on declaratory relief is not a final and conclusive judgment with which the High Court judgment potentially could conflict under § 6-9-253(c)(4).

Similarly, the Probate Court did not certify the order on indemnification and exoneration as final under Rule 54, and the order did not purport to resolve the probate action or the dispute between Macfarlanes and Mr. Clark. (*See* Doc. 18-1). The order acknowledged that "Macfarlanes, LLP . . . previously made a limited appearance opposing a Motion for Declaratory Judgment filed by Mr. Clark" and gave no indication that Macfarlanes had been served or joined in the probate action following that limited appearance. (Doc. 18-1, p. 2). Therefore, the Probate Court's order on indemnification and exoneration is not a final and conclusive judgment for the purposes of § 6-9-253(c)(4).

In addition, even if this Court treated the Probate Court orders as final and conclusive, the orders do not present a conflict that would prevent the recognition of the High Court judgment.  The Probate Court explicitly restricted the effect of the order on declaratory relief to the legal relationship between Mr. Clark and the Lange estate.  (Doc. 12-2, p. 2).  In contrast, the High Court judgment dealt only with the legal relationship between Mr. Clark and Macfarlanes.  (Doc. 10-22).  Because the judgment and order do not impose inconsistent obligations on Mr. Clark, who is the only party common to both, they are not in conflict.

As for the order on indemnification and exoneration, the portion of the order that deals with indemnification does not conflict with the High Court judgment. (*See* Doc. 18-1, p. 2 (ordering that "the Estate of Kathryn M. Lange shall indemnify Charles Lange Clark for any and all costs incurred in defending an action against him filed by the English law firm Macfarlanes, LLP and/or any potential judgment by Macfarlanes, LLP")).  The High Court held that Mr. Clark owes Macfarlanes a debt, but did not address whether a third party such as the Lange estate might, in turn, be obligated to reimburse Mr. Clark.  (Doc. 10-22).

The effect of the portion of the Probate Court order in which "Charles Lange Clark is exonerated for any personal liability entered into on behalf [of] the estate" is less certain, but this Court will not presume that the Probate Court attempted to affect the rights of a non-party, like Macfarlanes, with regard to which the Probate

Court repeatedly noted the bases for personal jurisdiction were lacking.  The order appears to use "exoneration" in the sense of a "right to be reimbursed by reason of having paid money that another person should have paid," which accords with the indemnification of Mr. Clark by the Lange estate.  Black's Law Dictionary (10th ed. 2014).  Therefore, the Court will not deny recognition to Macfarlanes's claim on the ground that the High Court judgment conflicts with another final and conclusive judgment.

### D. Contrary to an Agreement Between the Parties

A court need not recognize a foreign-country judgment if "the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court . . . ."  Ala. Code § 6-9-253(c)(5).  Rather than direct the Court's attention to a forum selection clause that required Macfarlanes to bring suit somewhere other than the High Court of Justice, Mr. Clark relies on a strained interpretation of the engagement letter and terms of business provided by Macfarlanes to make his argument under this provision of the Act.  (Doc. 69-1, pp. 52–53).

According to Mr. Clark, business term 14.8, which states, "[o]ur relationship will be governed by the laws of England and will be subject to the exclusive jurisdiction of the English courts," does not apply to Macfarlanes and the person

signing the engagement letter.  (Doc. 10-3, pp. 17, 22; Doc. 69-1, p. 53).  Instead, Mr. Clark asserts "[t]he provision only applied to Macfarlanes and its affiliates." (Doc. 69-1, p. 53).  Mr. Clark reaches this conclusion through reliance on the following portion of the terms of business:

> References in these terms (and any related communications in which we set out the basis on which we agree to act for you) to 'Macfarlanes', 'we', 'us', 'our' and 'the firm' are to Macfarlanes LLP . . ., other entities controlled by Macfarlanes LLP through which it carries out its business and any successor(s) in business of any such person.

(Doc. 10-3, p. 19; Doc. 69-1, pp. 31–33).  A similar provision also appears in the engagement letter:  "We write to set out the basis on which Macfarlanes LLP has agreed to act for you.  References in this letter to 'we', 'our', 'us' and 'the firm' should be interpreted as references to Macfarlanes LLP and entities controlled by Macfarlanes LLP through which it carries out its business."  (Doc. 10-3, p. 14).

In Mr. Clark's reading, Macfarlanes's engagement letter and terms of business inform new clients that internal disputes that arise among Macfarlanes and its affiliates will be decided in the English courts, while saying nothing about the resolution of disputes between Macfarlanes and the client with whom Macfarlanes is forming a legal relationship.  If the Court were inclined to credit such an interpretation, Mr. Clark would have shown—at most—that the forum selection clause in the terms of business did not require his dispute with Macfarlanes to be resolved in the English courts.  Mr. Clark does not cite to any

portion of the engagement letter, terms of business, or any other agreement between himself (in whatever capacity) and Macfarlanes that would prohibit Macfarlanes from seeking relief in the High Court of Justice.  Therefore, Mr. Clark has not shown that the High Court judgment is contrary to an agreement between himself and Macfarlanes, and the Court will not deny recognition to Macfarlanes's claim under § 6-9-253(c)(5).

### E. Seriously Inconvenient Forum

Mr. Clark's final argument that the Court should exercise its discretion and refuse to recognize the High Court judgment rests on § 6-9-253(c)(6), which allows a court to deny recognition to a foreign-country judgment if, "in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action . . . ."  Mr. Clark catalogues the inconveniences of an English forum, (a depiction that is undercut by frequent references in the record to Mr. Clark and his wife's trips to England in connection with Ms. Lange's affairs), but does not address the basis for the High Court's jurisdiction.  (Docs. 10-24, 19-1, 19-2; Doc. 69-1, pp. 53–55).  Because the Court has determined that the High Court acquired personal jurisdiction over Mr. Clark through his voluntary participation in the debt collection proceeding, § 6-9-253(c)(6) does not apply.  Accordingly, the Court will not refuse recognition to the

High Court judgment on the ground the English courts were a seriously inconvenient forum.

### F. Comity

As an alternative to recognition under the Act, Macfarlanes asserts that the High Court judgment also may be recognized under principles of comity. (Doc. 33, ¶¶ 41–43). Because the Court concludes that Macfarlanes's claim should be recognized under the Act, the Court does not reach this argument.

### <u>Conclusion</u>

The Court finds that Macfarlanes has established the basic requirements for recognition of the High Court judgment under the Alabama Uniform Foreign-Country Money Judgments Recognition Act. The Court also finds that Mr. Clark has failed to demonstrate the existence of any grounds that would prevent the recognition of the High Court judgment or permit the Court to exercise its discretion in that regard.

Therefore, for the reasons discussed above, the Court **GRANTS** Macfarlanes's renewed motion for summary judgment. (Doc. 35). The Court **DENIES WITH PREJUDICE** Mr. Clark's cross-motion for summary judgment. (Doc. 69). The Court **DENIES** Macfarlanes's motion to strike Mr. Clark's sur-reply as moot. (Doc. 74). The Court will enter judgment against Mr. Clark by separate order.

Macfarlanes shall file a brief and evidentiary material in support of its demand for attorneys' fees, expenses, and costs on or before August 5, 2016. Mr. Clark shall file a response on or before August 10, 2016. Macfarlanes may file a reply on or before August 15, 2016.

**DONE** and **ORDERED** this July 28, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE